IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL R. HESS, <br>       Plaintiff, <br>   vs <br> NATIONWIDE LIFE INSURANCE CO. and <br> NATIONWIDE LIFE AND ANNUITY <br> INSURANCE CO., <br>       Defendants. | Civil Action No. 15-692 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carol R. Hess, brings this action under Pennsylvania law alleging that the Defendants, Nationwide Life Insurance Co. and Nationwide Life and Annuity Insurance Co. (collectively, "Nationwide"), committed acts of breach of contract, misrepresentation and bad faith when they failed to pay her the amount of $150,828.00 on a life insurance policy purchased by her late husband, Richard P. Hess, but instead paid her only $51,200.00, relying upon a document signed by Richard Hess when he was legally and mentally incompetent.

Presently submitted for disposition is a motion to dismiss the Amended Complaint for failure to state a claim upon which relief could be granted, filed by the Defendants. For the reasons that follow, the motion will be denied.

Facts

Plaintiff is the widow of Richard P. Hess (the decedent), who died on June 1, 2014. (Am. Compl. ¶ 5.)[1] Nationwide issued Policy Number B101874350, insuring the life of Richard P. Hess in the amount of $150,828.00, on or about October 16, 1996. Plaintiff is the beneficiary of the policy. (Am. Compl. ¶¶ 6-7.)[2] Plaintiff states that she and her husband paid all appropriate

---

[1] ECF No. 10.
[2] Plaintiff indicates that she is no longer in possession of a copy of the policy, but that the

premiums associated with the policy. (Am. Compl. ¶ 8.)

On May 21, 2013, the decedent executed a delegation of authority which authorized his wife (Plaintiff herein) to access or to conduct business on his behalf with respect to the policy. (Am. Compl. ¶ 9 & Ex. A.) As Defendants note, Plaintiff herself also signed this document. However, the document made no changes to the benefit amount of the policy.

Plaintiff alleges that, at the time this document was signed, decedent was legally and mentally incompetent and that the delegation of authority did not authorize her to discuss or alter the amount of benefits under the policy. (Am. Compl. ¶¶ 10, 12.)

On September 30, 2013, the decedent executed a document entitled "Application for Conversion/Policy Adjustments to an Existing Life Insurance Policy." This application appears to decrease the face amount of the policy to $51,200.00. (Am. Compl. ¶ 13 & Ex. B at 3 § 8(g).) Plaintiff alleges that, at the time he did so, the decedent was legally and mentally incompetent and therefore the application for conversion is inoperable as a matter of law. (Am. Compl. ¶¶ 14-15.)

Specifically, Plaintiff alleges that, beginning in March 2013, the decedent was legally and mentally incapacitated as a result of: a) being involuntarily committed by a Mental Health delegate; b) being delusional; c) suffering from toxic encephalopathy; d) suffering degenerative neural impairments affecting his faculties; e) being disassociated from reality; f) suffering from persistent and extreme confusion; g) suffering from strokes; h) suffering from dementia; i) suffering from lack of memory; j) suffering from vascular dementia; k) suffering from subdural hematomas; l) suffering from cranial bleeding; m) suffering from delirium; n) suffering from cognitive impairment; and o) suffering from lack of thinking and judgment. (Am. Compl. ¶ 16.)

---

Defendants have one.

Following the decedent's death, Nationwide refused to pay the policy amount of $150,828.00, but rather paid Plaintiff only $51,200.00. Plaintiff states that she provided Nationwide with medical records establishing the decedent's incompetency at the time he signed the application, but that Nationwide refused to investigate the matter and continued to refuse to pay the proper amount of benefits. Plaintiff also states that, at no time after September 30, 2013 were the premiums charged by Nationwide lowered. (Am. Compl. ¶¶ 17-18, 39-42.)

Procedural History

On May 4, 2015, Plaintiff filed this action in the Court of Common Pleas of Lawrence County, Pennsylvania. On May 28, 2015, Defendants filed a notice of removal, removing the action to this Court on the basis of diversity of citizenship jurisdiction. They indicated that: 1) Plaintiff is a Pennsylvania citizen; 2) both Defendants are incorporated in Ohio and maintain their principal places of business in Ohio;[3] and 3) the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (Notice of Removal ¶¶ 2-5.)[4]

On June 15, 2015, Defendants filed a motion to dismiss (ECF No. 4.) In response, Plaintiff filed an Amended Complaint (ECF No. 10) and on July 6, 2015, the motion to dismiss was dismissed as moot (ECF No. 12). The Amended Complaint alleges claims of breach of contract (Count I), misrepresentation (Count II) and bad faith in violation of 42 Pa. C.S. § 8371 and the Unfair Insurance Practices Act, 40 P.S. § 1171.5 (UIPA). Plaintiff seeks $99,628.00 (the difference between the policy benefit and the amount paid by Nationwide), plus interest, costs and any other relief the Court deems appropriate.

On July 15, 2015, Defendants filed a motion to dismiss the Amended Complaint (ECF

---

[3] According to the Amended Complaint, both Defendants have a "business address" in Columbus, Ohio. (Am. Compl. ¶¶ 2-3.)
[4] ECF No. 1.

No. 14). Plaintiff filed a brief in opposition on August 3, 2015 (ECF No. 18) and on August 7, 2015, Defendants filed a reply brief (ECF No. 20).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Thus, the documents that Plaintiff has attached to her Amended Complaint (the delegation of authority and application for conversion) may be considered in determining whether Plaintiff has stated a claim upon which relief may be granted.

Defendants contend that: 1) Plaintiff cannot state a claim for breach of contract because, by her own admission, the decedent signed a form decreasing his death benefit to $51,200.00 and she merely alleges that at the time he signed the form he was legally and mentally incompetent, but his competence is presumed as a matter of law and has not rebutted that presumption, nor does she allege that he was ever adjudicated to be incompetent; 2) she cannot state a claim for misrepresentation because she merely vaguely asserts that false statements were made but provides no details of their contents, nor does she indicate what the premiums were before and after September 30, 2013, and the claim is further barred by the economic loss doctrine; and 3) she cannot state a claim for bad faith because Nationwide had a reasonable basis for paying a benefit of $51,200.00 based upon the application and she cannot rely upon an alleged violation of the UIPA as evidence of bad faith.

Plaintiff responds that: 1) she has properly pleaded a claim for breach of contract and she did not need to attach to the Complaint documentation establishing that the decedent was legally and mentally incompetent; 2) she has alleged enough information about the misrepresentations made by Defendants at this stage of the proceedings and the economic loss doctrine is inapplicable; and 3) she has stated a claim for bad faith in that Defendants were made aware of

the decedent's incompetence and were provided with medical records establishing it but refused to investigate the matter or alter the decision to pay the reduced benefit.

In a reply brief, Defendants argue that: 1) Plaintiff does not dispute the fact that the decedent signed the application reducing his death benefit and she has never established in a proceeding that he was mentally incompetent; 2) despite Plaintiff's protestations to the contrary, her fraud allegations are insufficient, the economic loss doctrine does apply and the gist of the action doctrine also bars the claim in any event; and 3) a bad faith claim may not proceed where any reasonable basis exists for the insurer's conduct.

Count I: Breach of Contract

In Count I, Plaintiff alleges that Defendants breached their contractual obligation to pay her $150,828.00 in benefits upon the death of the decedent, but instead paid her only $51,200.00. Defendants contend that they complied with the applicable contracts, namely the insurance policy as amended by the application reducing the policy benefit to $51,200.00. They argue that Plaintiff cannot simply allege that the decedent was mentally incompetent at the time he signed the application.

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citation omitted). Federal courts do not require a plaintiff to attach the alleged contract to the complaint. AM Logistics Inc. v. Sorbee Int'l, LLC, 2014 WL 99451, at *3 (E.D. Pa. Jan. 9, 2014).

Defendants note that Plaintiff alleges that the decedent was "involuntarily committed by a Mental Health delegate." (Am. Compl. ¶ 16(a).) However, they point out that Plaintiff has not

alleged when or for how long this commitment occurred and they argue that, under Pennsylvania law, "[n]o presumption of incapacity shall be raised from the alleged incapacitated person's institutionalization." 20 Pa. C.S. § 5512.1(f).

They also cite Pennsylvania law for the proposition that: "Mental competence to do business is presumed and the burden lies on him who denies it. The evidence to show incompetence must be 'clear and unquestionable', 'positive', 'strong, clear and compelling.'" Der Hagopian v. Eskandarian, 153 A.2d 897, 899 (Pa. 1959) (citations omitted). The court further held that:

> Contracts made with the incompetent before his adjudication as weakminded are voidable and can be avoided only on proper showing that he was in fact incompetent at the time. After the adjudication, transactions with him are presumably invalid. Even a lunatic may be liable if a transaction is for his benefit and there is no evidence of overruling.

Id. (citations omitted). "Written instruments are not to be set aside except upon convincing testimony that their execution was tainted with fraud, either actual or constructive, or that the person so executing them did not have what the law considers sufficient mental capacity to do so." Weir by Gasper v. Estate of Ciao, 556 A.2d 819, 824 (Pa. 1989) (citation omitted).

Defendants argue that, because the decedent was never adjudicated incompetent (and certainly not before he signed the application to reduce benefits on September 30, 2013), his application is presumptively valid. Plaintiff responds that the application is voidable if the decedent was incompetent at the time he signed it and that she has alleged that, in fifteen different respects, the decedent was mentally incompetent beginning in March 2013.

In a reply brief, Defendants emphasize that Plaintiff could have (and should have) commenced a proceeding to establish that the decedent was legally and mentally incompetent at the time he signed the application and then, if Nationwide still refused to pay the original death

7

benefit upon such a showing, could she argue that Nationwide breached its contractual obligations.

The Court need not reach the issue of the decedent's mental competence, however. Plaintiff has also alleged that the premiums charged by Nationwide were never reduced, an allegation that must be accepted as true at this stage of the proceedings. Nationwide responds that Plaintiff has not pleaded the exact amounts of premium that were paid before and after September 30, 2013 and that, even if the allegation is taken as true, Plaintiff would only be entitled to receive the difference between the premiums paid and the lower premiums that were due. Both of these contentions are unavailing.

First, as the insurance company, Nationwide cannot contend that it is unaware of the amount of premiums that were due from the decedent or the amounts that were paid. Indeed, it is far more likely that Nationwide has these records than it is that Plaintiff has them, particularly if the decedent paid the premiums or they were paid in cash. As noted above, Plaintiff is not required to produce such documentation when filing a complaint. "The Twombly plausibility standard, which applies to all civil actions, see Iqbal, 129 S.Ct. at 1953, does not prevent a plaintiff from 'pleading facts alleged "upon information and belief" ' where the facts are peculiarly within the possession and control of the defendant...." Little v. Borough of Greenville, 2013 WL 6835082, at *4 (W.D. Pa. Dec. 26, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)).

Second, Plaintiff is alleging that the "new" contract upon which Nationwide relies—the policy with the reduced premium and reduced benefit—never came into effect. She contends that she and her husband paid for a policy with a benefit of $150,828.00, but that she received instead only $51,200.00. This disputed issue cannot be resolved in the context of a motion to

dismiss. Therefore, with respect to Count I, the motion to dismiss will be denied.

Count II: Misrepresentation

In Count II, Plaintiff alleges that, on September 30, 2013, an authorized agent of Nationwide spoke with her and made false statements and provided false and misleading information with regard to: the provisions, benefits and cost of the policy; the amount of premiums and the death benefit related thereto; a statement that reduction of the value of the policy would result in a reduction of premiums; the amount of premiums based on coverage in the amount of $150,828.00 and alternative coverages; and the premiums being reduced if the amount of coverage was reduced. (Am. Compl. ¶ 28.) She alleges that Nationwide also made false and misleading statements to the decedent through the issuance of false and misleading "life billing" statements and "pending lapse billing" notices with regard to: the effect of premium notices on the death benefit; the status of premiums prior to the decedent's death, the status of the policy by the repeated issuance of improper and incorrect notices of premiums due as well as purported cancellations, issuing notices of unpaid premiums when no appropriate premiums were unpaid, issuing notices stating that premium payments were outstanding or late when in fact they were not, informing Plaintiff that premiums were past due and termination and/or lapse was imminent when in fact it was not, and informing Plaintiff the amount premium payments would be reduced if the decedent lowered the amount of death benefits payable upon his death. (Am. Compl. ¶ 29.)

Plaintiff alleges that Defendants knew or should have known that these statements were false and misleading, that the statements were made for the purpose of inducing her and the decedent to reduce death benefits available, that she justifiably relied on the false and misleading information, and that as a result she suffered damages in the amount of $99,628.00. (Am.

9

Compl. ¶¶ 30-33.)

Defendants argue that Plaintiff has not stated the circumstances constituting fraud with specificity as required by Federal Rule of Civil Procedure 9(b) and that the claim is barred by the economic loss doctrine. Plaintiff responds that she has sufficiently pleaded this claim and that the economic loss doctrine does not apply.

Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "a plaintiff must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). "Thus, Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)).

In paragraphs 27-30 of the Amended Complaint, cited above, Plaintiff has provided the who, what, when, where and how of the events at issue and as noted above, Nationwide cannot maintain that it does not know what the premiums were before and after September 30, 2013. Thus, the argument for dismissal based on a failure to meet the requirements of Rule 9(b) is rejected.

Determining State Law

The Court of Appeals has stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. Kowalsky v. Long Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994). In the absence of guidance from the state's highest court, we are to consider

10

> decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. McKenna, 32 F.3d at 825; Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise).

Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996). Because this is a diversity action, the Court must predict how the Pennsylvania Supreme Court would rule if presented with this situation. Whether a doctrine applies in this case is an issue of law to be resolved by the court. Bohler-Uddehom America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

The Pennsylvania Supreme Court recognizes that the "economic loss doctrine provides [that] no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Tech., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009) (quotation omitted). Pennsylvania has also adopted the Restatement (Second) of Torts § 552 exception (when professionals provide false information for the guidance of others in a business transaction) with respect to an architect/contractor situation, Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005), but has refused to extend it to a utility company (sued by an excavator for economic damages when the utility erred in marking the locations of some gas lines), because the utility company did not engage in supplying information to others for pecuniary gain. Excavation Tech., 985 A.2d at 843-44. See also Azur v. Chase Bank, USA, N.A., 601 F.3d 212, 223 (3d Cir. 2010) (credit card company not in the business of providing cardholder with information for pecuniary gain, so cardholder could not invoke § 552 exception).

Defendants have not addressed the § 552 exception, nor have they argued that they are not in the business of providing information for pecuniary gain. An insurance company that notifies policyholders about premiums and benefits is in the business of providing information

11

for pecuniary gain. See First Sealord Surety v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 378-79 (E.D. Pa. 2013) (rejecting argument that insurance company did not supply information for pecuniary gain). Certainly, Nationwide benefitted from the decedent's purported decision to reduce his death benefits. Thus, the economic loss doctrine does not apply here.

Pennsylvania courts have also recognized the "gist of the action doctrine," which states that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Bohler-Uddehom, 247 F.3d at 104 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. 1992)). Although the Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, the Pennsylvania Superior Court and federal courts applying Pennsylvania law have predicted that it would adopt it and have applied it. See Reardon v. Allegheny College, 926 A.2d 477, 486 (Pa. Super. 2007); Bohler-Uddehom, 247 F.3d at 103-04. The Court of Appeals has twice noted that the gist of the action doctrine and the economic loss doctrine are "remarkably similar" and has indicated that, in a non-products liability context, gist of the action is a "better fit." Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541, 544 n.5 (3d Cir. 2010); Bohler-Uddeholm, 247 F.2d at 104 n.11. As the court has explained:

> The gist of the action "doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 2002 PA Super 347, 811 A.2d 10, 14 (2002) (citation omitted). In some circumstances, "it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Id. (alteration in original) (quoting Bash v. Bell Tel. Co., 411 Pa. Super. 347, 601 A.2d 825, 829 (1992)). That the misconduct was fraudulent does not bar application of the gist of the action principle. Werwinski v. Ford Motor Co., 286 F.3d 661, 681 (3d Cir. 2002).

Pediatrix, 602 F.3d at 548.

Plaintiff argues that claims of fraud in the inducement are not barred by the gist of the action doctrine. There is some support for this position. See Knight v. Springfield Hyundai, 81 A.3d 940, 950 (Pa. Super. 2013) (alleged misrepresentations occurred prior to the signing of the contract). But see McGuckin v. Allstate Fire and Casualty Ins. Co., 2015 WL 4579028, at *4 (E.D. Pa. July 30, 2015) (whether fraud in the inducement is barred depends on whether the fraud is "extraneous to the alleged breach of contract, not interwoven with the breach of contract"). Given the uncertainty in Pennsylvania law concerning this doctrine and the parties' limited briefing, it is not necessary to resolve this issue at this stage of the proceedings. Therefore, with respect to Count II, Defendants' motion to dismiss will be denied.

Count III: Bad Faith

In Count III, Plaintiff alleges that Defendants acted in bad faith when they paid only $51,200.00 in benefits on the policy, even after she provided them with medical records establishing the decedent's incompetency at the time he signed the application reducing the benefits. She alleges that Nationwide performed no investigation into the issue of the decedent's mental incompetence, but instead maintained that, absent a judicial finding that the decedent was incompetent, the policy amount was reduced to $51,200.00.

Defendants move to dismiss this claim on the grounds that Plaintiff has not shown by clear and convincing evidence that they lacked a reasonable basis for denying the benefits she sought and that she improperly relies upon a violation of the UIPA to establish her bad faith claim. Plaintiff responds that a bad faith claim may be based upon a failure to investigate, and that the defense of reasonable basis is evaluated at the summary judgment stage of the proceedings. In a reply brief, Defendants reiterate that there can be no doubt they had a reasonable basis for paying a benefit of $51,200.00 based on the decedent's application and

given that, under Pennsylvania law, mental competency is presumed.

Defendants have narrowly focused only on the initial decision to pay $51,200.00 in benefits, rather than acknowledging Plaintiff's additional contention that, even after being presented with medical records that called the decedent's mental competency into question, they refused to investigate the matter and reconsider the decision. As Plaintiff notes, under Pennsylvania law, bad faith may occur before, during and after litigation and may include an insurer's failure to investigate. Thomer v. Allstate Ins. Co., 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011).

In addition, Defendants' argument that Plaintiff "has not shown by clear and convincing evidence" that they lacked a reasonable basis for denying her claim is premature. Only after the record has been developed in this case can the determination be made as to whether Nationwide had or lacked a reasonable basis for denying the claim.

Defendants cite Hammond v. U.S. Liability Co., 2015 WL 401503 (W.D. Pa. Jan. 28, 2015). In that case, judgment on the pleadings was entered in the insurer's favor, but only after the court determined that the breach of contract claim could not withstand a motion to dismiss and that the claim was also barred by the statute of limitations. Id. at *13. They also cite Pfister v. State Farm Fire and Casualty Co., 2011 WL 3651349 (W.D. Pa. Aug. 18, 2011), but in that case, the plaintiff was alleging failure to investigate the extent of mold damage when the policy did not cover mold damage. Both of these cases are distinguishable from this case.

Whether Defendants' failure to investigate the matter and reconsider the benefit amount after being presented with medical records relating to the decedent's mental incompetency was reasonable cannot be determined in the context of a motion to dismiss.[5] Therefore, with respect

---

[5] Defendants also argue that Plaintiff cannot support her bad faith claim with reference to UIPA

to Count III, the motion to dismiss will be denied.

For all these reasons, Defendants' motion to dismiss will be denied. An appropriate order follows.

---

violations. "There is some conflict between the Pennsylvania state court and federal court regarding whether UIPA violations can support a bad faith claim under Section 8371." Purcell v. State Farm Mut. Auto. Ins. Co., 2012 WL 425005, at *5 (E.D. Pa. Feb. 10, 2012). Specifically, the Pennsylvania Superior Court has permitted UIPA violations to be considered but the Court of Appeals for the Third Circuit and federal district courts have not. Id. (collecting cases). However, the Court need not pursue this matter, as Plaintiff does not rest her bad faith claim solely on UIPA violations. See Smith v. Allstate Ins. Co., 904 F. Supp. 2d 515, 520 n.4 (W.D. Pa. 2012).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL R. HESS,<br>      Plaintiff,<br><br>  vs<br><br>NATIONWIDE LIFE INSURANCE CO. and<br>NATIONWIDE LIFE AND ANNUITY<br>INSURANCE CO.,<br>      Defendants. | Civil Action No. 15-692 |

ORDER

AND NOW, this 17th day of September, 2015,

IT IS HEREBY ORDERED that the motion to dismiss the Amended Complaint filed by the Defendants (ECF No. 14) is denied.

IT IS FURTHER ORDERED that the Defendants file an answer to the Amended Complaint by October 1, 2015.

                                                  s/Robert C. Mitchell_____
                                                  ROBERT C. MITCHELL
                                                  United States Magistrate Judge